*E-FILED 08-17-2010*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PIOTR J. GARDIAS,<br><br>　　　　Plaintiff,<br>　v.<br><br>THE CALIFORNIA STATE UNIVERSITY,<br>SAN JOSE STATE UNIVERSITY,<br><br>　　　　Defendant.<br>_____/ | No. C09-02090 HRL<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING DEFENDANT'S REQUEST FOR SANCTIONS AND VEXATIOUS LITIGANT ORDER**<br><br>**[Re: Docket No. 43]** |

I.   BACKGROUND

Since 1989, pro se plaintiff Piotr Gardias has been employed by the California State University system at the San Jose State University campus.[1] For most of his employment there, he has worked as a Building Service Engineer, a skilled trade position involving the operation, maintenance, inspection and repair of the ventilation, heating and water systems on campus. It is the position he continues to hold today. Although the total number of employment complaints he has filed against the University is unknown, in this action—his eighth in a series of ten discrimination lawsuits filed before the undersigned[2]—plaintiff sues for alleged

---

[1] Defendant Regents of the California State University says that it was erroneously sued as "The California State University" and "San Jose State University." It will be referred to here simply as "defendant" or "University."

[2] The first five suits (Case Nos. C04-04086, C04-04768, C05-01242, C05-01833 and C06-04695), which this court consolidated, alleged discriminating actions spanning, generally, the time period 2001 to 2006. The court ultimately granted summary judgment in favor of defendant. The court also granted summary judgment for defendant in the sixth lawsuit, C07-06242. The seventh action, C08-05498, covering January 2008 to

employment discrimination under Title VII, 42 U.S.C. § 2000e-5, as well as for alleged disability discrimination under Title I, 42 U.S.C. § 12111, et seq. and Title V, 42 U.S.C. § 12203. In essence, Gardias says that on December 11, 2008, he was suspended from work for 30 days without pay when his director Adam Bayer "alleged my unprofessional conduct, incompetence and failure or refusal to perform the normal and reasonable duties of my position." (Docket No. 1 (Complaint at 2)). Plaintiff further alleges that he was "verbally harassed and humiliated" by Bayer; "subjected to different terms and conditions of employment" by another supervisor, Daryn Adams; and "retaliated against because I engaged in protected activities." (Id.). Gardias claims that defendant's conduct is discriminatory with respect to his Polish national origin, as well as his "knee injury and leukemia." (Id.). The alleged discrimination is said to have occurred, at the latest, on or about January 7, 2009. (Id.).

Defendant now moves for summary judgment as to all claims for relief. It also requests sanctions under Fed. R. Civ. P. 11, as well as an order declaring Gardias to be a vexatious litigant. Plaintiff opposes the motion. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. Upon consideration of the moving and responding papers, as well as the arguments presented at the motion hearing, this court grants defendant's motion for summary judgment, but denies the University's request for sanctions, and denies its request for an order declaring plaintiff to be a vexatious litigant.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477

---

November 2008, resulted in a judgment of dismissal for defendant. Motions to dismiss have been filed in the ninth (C09-05291) and tenth (C09-05611) actions, which remain pending.

U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. See FED. R. CIV. P. 56(e)(2); Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See id. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. Id.

Although it is not the court's task to scour the record in search of a genuine issue of triable fact, see Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996), this court has done so here; and as discussed, below, it finds none.

### III. DISCUSSION

A. <u>Alleged Disability Discrimination (Americans With Disabilities Act, 42 U.S.C. §§ 12111 and 12203</u>

Gardias claims that the University failed to provide reasonable accommodation for his leukemia and knee injury and did so in retaliation for his participation in protected activities. The University moves for summary judgment on the ground that these claims are barred by the

*res judicata* doctrine. Specifically, defendant contends that the claim of alleged disability discrimination has already been adjudicated by this court in *Gardias v. San Jose State University*, C07-06242. This court agrees.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" Taylor v. Sturgell, 128 S. Ct. 2161, 2171, 171 L.Ed.2d 155 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). "Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Id. (quoting New Hampshire, 532 U.S. at 748-49. "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" Id. at 2171 (quoting Montana v. United States, 440 U.S. 147, 15-54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)).

Here, Gardias claims that, on December 10, 2008, he was denied the use of an electric cart to carry an electric motor part. He argues that he is not precluded from proceeding with this claim here because the underlying facts are not identical to those litigated in Case No. C07-06242. In that prior action, Gardias accused defendant of disability discrimination because the University reportedly denied him the use of his own personal cart, and instead required him to share a cart with his colleagues (as all employees in his department were expected to do with the University's limited cart resources). Although Gardias failed to exhaust that claim of alleged disability discrimination, this court nonetheless proceeded to consider it on the merits. On September 17, 2009, this court granted summary judgment in defendant's favor as to that disability discrimination claim because Gardias failed to show that he was disabled. Indeed, Gardias testified in deposition that he does not consider himself to be disabled at all—whether

4

1  due to leukemia or to his knee.  And, medical reports Gardias himself submitted to the court
2  indicated that he was in good health, with the functional capacity to carry an 85-pound box in
3  the horizontal carry and a 75-pound box in the front carry.  The court found that, even viewing
4  the record in the light most favorable to plaintiff, and drawing all reasonable inferences in his
5  favor, the evidence showed that (a) after Gardias requested his own personal cart, defendant
6  took away another employee's cart so that it could be assigned to Gardias; and (b) Gardias
7  received his own cart within a few months after his request.  Although Gardias was unhappy
8  that the University did not act as promptly as he would have liked, he offered nothing more than
9  speculation that defendant had acted with any discriminatory intent.  (See Case No. C07-06242,
10 Docket No. 62 at 5-7, 10-12).

11          Gardias contends that the present lawsuit raises new issues because the complaint
12 addresses a different time period than the prior action.  True, the event in question here
13 allegedly occurred on a different date (i.e., December 10, 2008); and, the facts underlying
14 Gardias' prior claims are not completely identical to those underlying the claim asserted in the
15 instant action.  However, the claims are, in substance, the same.  Moreover, the slight factual
16 differences between the underlying facts are irrelevant in light of the legal principles that
17 govern the instant and prior actions.  See generally Starker v. United States, 602 F.2d 1341,
18 1346 (9th Cir. 1979) ("[C]ollateral estoppel [is] applicable, even though some facts differed in
19 the two cases at issue, because the differing facts were not 'essential to the judgment' or 'of
20 controlling significance' in the first case") (quoting Montana, 440 U.S. at 159, 99 S. Ct. 976)).

21          More to the point, even if the disability discrimination claim was not precluded, Gardias
22 fails to present evidence giving rise to a triable issue as to the existence of any disability, much
23 less any evidence that he asked for particular accommodation that was refused.  To begin,
24 throughout his myriad lawsuits before the undersigned, Gardias has both claimed and
25 disclaimed to be disabled, depending on what stance he believed would be most advantageous
26
27
28

5

to him in the litigation at a given moment in time.[3]  (See Consolidated Case No. C04-04086, Docket No. 365, March 31, 2009 Summary Judgment Order, at 2 n.3; Case No. C07-06242, Docket No. 62, Sept. 17, 2009 Summary Judgment Order at 7-8).  Moreover, when probed at the motion hearing to explain the disabilities in question, Gardias stated that his 1993 knee injury, which apparently was assessed to be no more than a 7% disability, causes him to limp, but only occasionally.  When his knee bothers him, Gardias says that he is still able to do his job, albeit he works a bit slower.  He stated to the court, however, that no one has complained about his working slower when he is limping.  Gardias noted that his director, Adam Bayer, told him at some point to work faster, but plaintiff acknowledged that the comment was made at a point in time when he was not limping.  There is no indication that plaintiff asked the University for any specific accommodation for his knee, albeit he allegedly was told at some point that his 7% knee injury was not considered to be disabling in the sense that any accommodation was required.  Plaintiff says that he asked about accommodations at one time, but acknowledges that he merely asked what kind of accommodations the University offers generally.

As for his leukemia, apparently a chronic but stable condition, Gardias told this court that he generally feels strong and is able to do his job.  His medication, however, sometimes causes him to sometimes feel tired.  During those times when he feels tired or weak, plaintiff says that he either takes a break or takes sick leave until he feels better and is then able to do his work.  Although Gardias complains that his supervisors should know when he is feeling weak or tired, he also told the court that he does not ask them for help when he feels he needs it.  Gardias has, however, asked for, and received, help from his colleagues as needed.

With respect to the particular event in question, Gardias says that on December 10, 2008, supervisor Daryn Adams did not permit him to use a cart to carry an electric motor, whereas Thai Nguyen, one of Gardias' colleagues, allegedly was permitted to use a cart to carry certain other parts.  According to Gardias, Nguyen has no disabilities.  At the motion hearing,

---

[3]  For example, in Case No. C04-04086, when the University tried to obtain discovery as to Gardias' health-related claims, he disclaimed any disability in an attempt to block defendant's access to his underlying medical records.

6

1  Gardias described the part he had to carry as a globe-sized, 30-pound motor, which he says he
2  had to carry for a distance of about 30 feet.  There is no indication that Gardias was limping or
3  feeling weak or tired at that time.  There is also no evidence suggesting that Gardias told Adams
4  that he needed to use his cart to carry the motor because of his knee or his leukemia.  Instead,
5  Gardias' beef is this:   Adams should not have required him to carry the part because the ground
6  was not properly paved, and although plaintiff did not trip or fall down, Gardias contends that,
7  in a world where just about anything is possible, he might have taken a spill and injured
8  himself.  On the record presented, the court finds no evidence giving rise to a triable issue as to
9  any disability discrimination or retaliatory intent.  Defendant's summary judgment motion as to
10  this claim is granted.

11  B.      Alleged National Origin Discrimination (Title VII, 42 U.S.C. § 2000e)

12  Gardias claims that defendant discriminated against him on the basis of his Polish
13  national origin.  The alleged discriminatory conduct manifested itself in two ways.  First,
14  Gardias appears to claim that national origin discrimination is evidenced by the December 10,
15  2008 incident (described above) in which Adams allegedly did not allow plaintiff to use a cart
16  to carry an electric motor.  Relatedly, Gardias claims that Adams (and director Bayer) also
17  harassed him.  Second, plaintiff contends that his December 2008 unpaid suspension also was
18  motivated, in whole or in part, by discrimination as to his national origin.

19          1.      Burden of Proof

20  Title VII prohibits employment discrimination based on, among other protected
21  classifications, a person's national origin.  42 U.S.C. § 2000e-2(a).  When responding to a
22  summary judgment motion, a plaintiff may proceed by following the McDonnell Douglas[4]
23  framework, or alternatively, may produce direct or circumstantial evidence demonstrating that a
24  discriminatory reason more likely than not motivated the defendant.  McGinest v. GTE Serv.
25  Corp., 360 F.3d 1103, 1122 (9th Cir. 2004).

26  Under the McDonnell Douglas burden-shifting framework, a plaintiff must establish a
27  *prima facie* case of discrimination.  See Cornwell v. Electra Central Credit Union, 439 F.3d

28
---
[4]     McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

7

1018, 1028 (9th Cir. 2006); Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2004). To establish a *prima facie* case of discrimination, a plaintiff must offer proof that (1) he belongs to a class of persons protected by Title VII; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated him differently than a similarly situated employee who does not belong to the same protected class as the plaintiff. Cornwell, 439 F.3d at 1028. Establishing a *prima facie* case creates a presumption that the employer's challenged actions were made because of plaintiff's protected classification. Id.

An employer may rebut this presumption by presenting admissible evidence that the challenged employment action was made for a legitimate, nondiscriminatory reason. Id. If the employer does so, the presumption of unlawful discrimination "'simply drops out of the picture.'" Dominguez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993)). The burden then shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination. Cornwell, 439 F.3d at 1028-29.

Plaintiff bears the ultimate burden of proving discrimination. In order to survive summary judgment, the burden of proof may be met in two ways: (1) by offering direct or circumstantial evidence that the challenged employment decision was more likely motivated by discrimination or (2) offering direct or circumstantial evidence that the employer's proffered explanation is not credible—i.e., a mere pretext for discrimination. Id. "Because the only issue remaining in a disparate treatment case after the defendant has rebutted the McDonnell Douglas presumption is 'discrimination *vel non*,'" the Ninth Circuit has said that it is not particularly significant whether a plaintiff relies on the McDonnell Douglas presumption or whether he relies on direct or circumstantial evidence of discriminatory intent to meet his burden of proof. Id. at 1030 (quoting McGinest, 360 F.3d at 1123)). Under either approach, a plaintiff must produce some evidence suggesting that the employer's challenged actions were due, in whole or in part, to discriminatory intent. Id.

8

It is unclear whether, under Ninth Circuit law, circumstantial evidence must be "specific" and "substantial," or whether a lesser amount of such evidence will suffice.[12]  This court need not reach a conclusion as to the requisite level of circumstantial evidence, however, because plaintiff's evidence of discrimination is insufficient under either standard.

### 2. Denial of Use of Electric Cart

As noted above, Gardias alleges that Daryn Adams did not permit him to use a cart to carry a globe-sized, 30-pound motor for a distance of 30 feet, whereas a Vietnamese colleague reportedly was permitted to use a cart to transport other parts.  Defendant argues that issue preclusion prevents Gardias from litigating this incident here because that issue was adjudicated in plaintiff's prior lawsuit, Case No. C07-06242.

"Collateral estoppel, or issue preclusion, prevents parties from relitigating an issue of fact or law if the same issue was determined in prior litigation." Resolution Trust Corp. v. Keating, 186 F.3d 1110, 1114 (9th Cir. 1999) (citing Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir. 1988)).  Litigation of an issue will be foreclosed if (1) Gardias had a full and fair opportunity to litigate the issues in the prior action; (2) the issues were actually litigated and necessary to support the judgments; (3) the issues were decided against Gardias; and (4) Gardias was a party to the prior action.

For the same reasons discussed above in Section III.A., this court finds that, under the facts presented here, Gardias' complaints about being prohibited from use of an electric cart are precluded.  Even if they were not precluded, Gardias has not presented evidence establishing a *prima facie* case of national origin discrimination.  Gardias has submitted his own declaration, as well as the declaration of a colleague, Robert Felice, attesting that a decision was made that Nguyen would transport certain parts by cart and Gardias would not use a cart to transport the motor part.  However, there is nothing other than Gardias' speculation, that this decision was

---

[12] Compare Cornwell, 439 F.3d at 1030 ("conclud[ing] that in the context of summary judgment, Title VII does not require a disparate treatment plaintiff relying on circumstantial evidence to produce more, or better, evidence than a plaintiff who relies on direct evidence") and McGinest, 360 F.3d at 1122 (stating that circumstantial and direct evidence should be treated alike) with Dominguez-Curry, 424 F.3d at 1038 (stating that circumstantial evidence of pretext must be "specific" and "substantial").

9

based, in whole or in part, upon any discriminatory animus re Gardias' Polish national origin. Defendant's summary judgment motion as to this issue is granted.

### 3. Alleged Harassment

Somewhat relatedly, Gardias claims that Daryn Adams also harassed him. The alleged harassment appears to be based on a single incident in which Adams reportedly expressed concern about Gardias' driving skills and declined to ride in plaintiff's electric cart, stating, "I am afraid you can kill me." (Gardias Decl. ¶ 4; Felice Decl., ¶ 2). Gardias was offended by Adams' remark because plaintiff says he has never had an accident in his cart. There is also a fleeting reference in plaintiff's papers to his director, Adam Bayer, who allegedly said that Gardias refused to attend a certain training program. Plaintiff says that he did not refuse to attend the training because he was never enrolled in the program in the first place. Gardias also asserts that on June 24, 2008, Bayer yelled at him.

Title VII's prohibition against unlawful employment practices "encompasses the creation of a hostile work environment, which violates Title VII's guarantee of 'the right to work in an environment free from discriminatory intimidation, ridicule, and insult.'" McGinest, 360 F.3d at 1112 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 106 S. Ct. 2399, 91 L.Ed.2d 49 (1986)). To prevail on a hostile work environment claim, Gardias must show that his work environment was both subjectively and objectively hostile—that is, he must show that he perceived his work environment to be hostile, and that a reasonable person in his position would perceive it to be so. Dominguez-Curry, 424 F.3d at 1034. In determining whether the alleged conduct created an objectively hostile work environment, the court evaluates "all the circumstances, 'including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. at 1034 (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71, 121 S. Ct. 1508, 149 L.Ed.2d 509 (2001)). "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of

employment.'" Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998)).

Gardias says that the harassment in question has caused him some stress. In particular, he says that the June 24, 2008 event (in which Bayer reportedly yelled at him) caused him to have a near-fainting episode, as evidenced by medical reports plaintiff has filed with the court. The report prepared by Gardias' personal physician, Dr. Nishime, states that Gardias may have an anxiety disorder and a panic disorder—conditions which were either better or resolved by the date of Dr. Nishime's examination. Dr. Nishime also notes that Gardias may also have a paranoid personality disorder and recommends that Gardias seek psychiatric consultation. (Docket No. 58). Dr. Nishime otherwise noted that Gardias was in good health and, after two days of rest, could resume his regular duties at work. (Id.). (A few months prior to his near-fainting episode, Gardias had a psychiatric evaluation with Dr. Alan Sidle, who noted that while Gardias did not appear to have a chronic paranoid illness, further testing would be necessary in order to rule out a paranoid personality. See Docket No. 28).

As plaintiff has been told repeatedly in prior lawsuits, Title VII "does not set forth 'a general civility code for the American workplace.'" Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L.Ed.2d 345 (2006) (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80, 118 S. Ct. 998, 140 L.Ed.2d 201 (1998)); Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003) (quoting Faragher, 524 U.S. at 788). Even viewing the record in the light most favorable to plaintiff, there is no triable fact issue here. These fleeting and random events are not severe or pervasive enough to violate Title VII. See, e.g., Vasquez, 349 F.3d at 642-44 (concluding that defendant's few comments about Hispanics and other alleged harassment, made over the course of more than one year, did not create a hostile work environment). Defendant's motion for summary judgment as to plaintiff's harassment claims is granted.

4. <u>Suspension</u>

As noted above, in December 2008, Gardias was suspended for 30 days for alleged unprofessional conduct, incompetence, and failure or refusal to perform the normal and

11

1  reasonable duties of his position.  (Cain-Simon Decl., Ex. A).  Gardias challenged that
2  suspension through administrative channels by filing an appeal to the State Personnel Board
3  (SPB).  In the SPB matter, Gardias was represented by an attorney (provided by his union), as
4  well as by his union representative.  A hearing was held before an Administrative Law Judge
5  (ALJ).  During those proceedings (and reportedly after some testimony had been given by
6  plaintiff's supervisors), the parties eventually negotiated a settlement, which the ALJ later
7  presented as a proposed decision to the SPB.  In essence, the University agreed to retroactively
8  reduce Gardias' suspension to 3 days and to pay him for the other 27 days.  (There is no dispute
9  that payment of those wages has been made in full).  In exchange, Gardias agreed to drop the
10 SPB matter, and further agreed that he would "not have the ability to appeal the three (3) day
11 suspension referenced in paragraph one [of the settlement] to the [SPB]."  (Id., Ex. D at 3 ¶2).
12 Without expressing any opinion as to whether the settlement terms were reasonable under the
13 circumstances, the SPB approved the settlement and adopted it as the SPB's decision in the
14 case.  (Id. at 1).

15       There is no dispute as to the above-recited facts, all of which are material.  Nor is there
16 any controversy that the SPB settlement is valid and binding on all parties.  The only point of
17 contention here is whether that settlement constitutes a release of Gardias' claims asserted in the
18 instant lawsuit, which was filed approximately two months *before* the SPB settlement was
19 entered.[13]

20       "The interpretation and validity of a release of claims under Title VII is governed by
21 federal law."  Stroman v. West Coast Grocery Co., 884 F.2d 458, 461 (9th Cir. 1989).  "[A]n
22 agreement need not specifically recite the particular claims waived in order to be effective."  Id.
23 Nevertheless, in order for a waiver of Title VII claims to be valid, the record must show that the
24 waiver was "voluntary, deliberate and informed."  Id. at 462.  The determination whether a
25 waiver of Title VII was "voluntary, deliberate, and informed," is "'predicated upon an

---

[13] The court does not understand defendant to argue that the instant action is barred by *res judicata* principles based on the SPB settlement.  Indeed, unreviewed decisions of the SPB do not have preclusive effect on Title VII claims.  McInnes v. State of California, 943 F.2d 1088, 1093-94 (9th Cir. 1991).

12

1  evaluation of several indicia arising from the circumstances and conditions under which the
2  release was executed.'" Id. (quoting Coventry v. U.S. Steel Corp., 856 F.2d 514, 522 (3d Cir.
3  1988). "Of primary importance in this calculation is the clarity and lack of ambiguity of the
4  agreement, the plaintiff's education and business experience, the presence of a noncoercive
5  atmosphere for the execution of the release, and whether the employee had the benefit of legal
6  counsel." Id. (citations omitted).

7       To be sure, the record presented demonstrates that plaintiff's agreement to the SPB
8  settlement was deliberate, voluntary and informed. There is nothing to indicate the that
9  settlement was coerced. And, as noted above, Gardias negotiated that settlement with the full
10 assistance of his union representatives, including an attorney. Nevertheless, the plain language
11 of the agreement indicates that Gardias did not knowingly or voluntarily waive his Title VII
12 claims asserted in the instant action. To the contrary, the only thing Gardias apparently agreed
13 to release was his right to administratively appeal the (reduced) 3-day suspension. (Cain-Simon
14 Decl., Ex. D at 3, ¶ 2). The University points out that the parties also executed a waiver of
15 California Civil Code § 1542,[14] which provides some protection against the effects of a general
16 release. The parties' settlement agreement, however, contains no underlying general release of
17 all claims other than those Gardias might have raised through an administrative appeal to the
18 SPB. Indeed, the record presented indicates that during the settlement negotiations, (a) the
19 University initially insisted upon a general release clause that would apply to Gardias'
20 discrimination claims asserted in the instant action; (b) Gardias specifically objected to the
21 inclusion of any such release; and (c) the University apparently acquiesced and removed the
22 broader general release clause from the agreement, albeit the California Civil Code § 1542
23 waiver remained. (Keating Decl., ¶¶ 4-7).

24     The University maintains that (a) the agreement demonstrates that Gardias willingly
25 accepted a 3-day suspension as proper punishment; and (b) the SPB would not have adopted the

---

[14] California Civil Code § 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

13

settlement as its decision—thereby giving the agreed-upon suspension the imprimatur of the state—if the SPB suspected that the underlying suspension constituted discrimination. With respect to the first point, the agreement itself states that it "shall not be construed as an admission by any party, person, or entity of any liability or wrongdoing at any time for any purpose." (Cain-Simon Decl., Ex. D at 3, ¶ 3). As for the second, there is nothing in the record suggesting that the issue of discrimination played any part in the administrative proceedings.

Even so, Gardias has not managed to persuade that the suspension was motivated, in whole or in part, by any discriminatory animus based on his national origin. Even assuming, without deciding that Gardias had established all of the elements of a *prima facie* case of discrimination, defendant has articulated a legitimate, nondiscriminatory reason for its decision. According to defendant, there were a number of instances in the six-month period leading up to the suspension where Gardias displayed unprofessional conduct, failed to perform his job duties competently, or failed or refused to perform his job duties at all. In sum, the University cites several incidents where Gardias (a) failed to complete certain jobs in a timely fashion, or failed to complete them at all; (b) refused to speak with or otherwise respond to his supervisors (or became confrontational and yelled) when they attempted to discuss performance issues; (c) refused to follow certain department procedures; and (d) used his cart in an unsafe manner (e.g., parking it in the entry way to a parking garage). (Cain-Simon Decl., Ex. A).

As noted above, Gardias denies ever crashing his cart. He also says that he did not take as long to complete some tasks as defendant claims he did. But Gardias otherwise argues that the suspension must have been discriminatory because (a) a University employee praised his work on one particular job; and (b) his supervisor, Daryn Adams, allegedly did poor work on one occasion. The fact that Gardias' work was praised on one occasion, and that his supervisor's work allegedly was sub-par on another, is neither here nor there with respect to the suspension in question. Gardias has not submitted evidence creating a triable issue as to whether the University's proffered reasons for the suspension are mere pretext. Viewing the record as a whole, and in a light most favorable to plaintiff, this court finds no genuine issue of

14

1  material fact that Gardias' suspension was motivated, either in whole or in part, by
2  discriminatory motives.

3  Gardias nevertheless maintains that the suspension was based on retaliatory motives
4  because of his prior complaints against the University. Title VII prohibits an employer from
5  retaliating against an employee because that employee has opposed an unlawful employment
6  practice, or has made a charge, testified or assisted or participated in an employment
7  discrimination investigation or proceeding. 42 U.S.C. § 2000e-3(a). The same burden-shifting
8  analysis that applies to claims for discrimination also apply to retaliation claims under Title VII.
9  To make a *prima facie* case of retaliation, a plaintiff "must establish that he undertook a
10 protected activity under Title VII, his employer subjected him to an adverse employment action,
11 and there is a causal link between those two events." Vasquez, 349 F.3d at 646.

12 There is no dispute that the disciplinary suspension is an adverse action. And, defendant
13 acknowledges that, given the number of complaints plaintiff has filed, the suspension likely
14 took place within six months of some protected activity. Yet, in determining whether plaintiff
15 may proceed beyond the summary judgment stage, the length of time between a protected
16 activity and an adverse employment action is not to be considered "without regard to its factual
17 setting." Coszalter v. City of Salem, 320 F.3d 968, 978 (9th Cir. 2003). Here, the factual
18 setting indicates that, for the past six years or so, plaintiff has filed serial complaints—lodging a
19 steady stream of administrative charges, followed by federal and state court lawsuits, for every
20 decision, act, setback, disappointment, or perceived slight allegedly based on his national
21 origin. Beyond the bare fact of the timing of his suspension, Gardias has not presented
22 evidence sufficient to create a triable issue as to any retaliatory motive for the suspension. See,
23 e.g., Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000) (refusing to make a
24 "complaint tantamount to a 'get out of jail free' card for employees engaged in job
25 misconduct.").[15]

26
27
28 
---
[15] This court does not suggest that Gardias was engaging in "misconduct," but the sense of logic expressed by the Brooks court applies here as well.

Even viewing the record as a whole, and in a light most favorable to plaintiff, he has not presented evidence giving rise to a triable issue that the suspension was a mere pretext. Accordingly, defendant's motion as to plaintiff's claims of unlawful retaliation is granted.

C. <u>Request for Sanctions and a Vexatious Litigant Order</u>

At the very end of its summary judgment motion, the University requests monetary sanctions for alleged Fed. R. Civ. P. 11 violations, as well as an order declaring Gardias to be a vexatious litigant. Defendant argues that all of Gardias' serial lawsuits are meritless and that, without an order granting the requested relief, the stream of frivolous lawsuits will continue.

A motion for sanctions under Fed. R. Civ. P. 11 "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11 (b)." FED. R. CIV. P. 11(c)(2). Plaintiff correctly notes that defendant's request for sanctions is procedurally flawed because it is merely tacked on to the end of its summary judgment motion. As for defendant's request for an order declaring Gardias to be a vexatious litigant, "[t]he All Writs Act, 28 U.S.C. § 1651(a), provides district courts with the inherent power to enter pre-filing orders against vexatious litigants." <u>Molski v. Evergreen Dynasty Corp.</u>, 500 F.3d 1047, 1056 (9th Cir. 2007). Such orders are reviewed for abuse of discretion and "are an extreme remedy that should rarely be used." <u>Id.</u> at 1056-57 (citing <u>De Long v. Hennessey</u>, 912 F.2d 1144, 1147 (9th Cir. 1990)). Accordingly, courts "should enter a pre-filing order constraining a litigant's scope of actions in future cases only after a cautious review of the pertinent circumstances." <u>Id.</u>

At the same time, however, "[f]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." <u>Id.</u> (quoting <u>De Long</u>, 912 F.2d at 1148). Thus, district courts should examine the following four factors in determining whether a pre-filing order should issue:

(1) The litigant must be given notice and an opportunity to be heard before an order issues.

16

1  (2) The court must compile "an adequate record for review," that should include a list of all of the cases and motions that led the district court to conclude that a vexatious litigant order was needed;

4  (3) The court must make substantive findings about the frivolous or harassing nature of the plaintiff's litigation.

6  (4) The vexatious litigant order must be narrowly tailored to closely fit the specific vice encountered.

Id.; De Long, 912 F.2d at 1147-48.

In deciding whether the litigant's lawsuits are frivolous or harassing, the court "must look at both the number and content of the filings as indicia of the frivolousness of the litigant's claims." Id. at 1059 (internal quotations and citations omitted). "'An injunction cannot issue merely upon a showing of litigiousness. The plaintiff's claims must not only be numerous, but also be patently without merit.'" Id. (quoting Moy v. United States, 906 F.2d 467, 470 (9th Cir. 1990). "It is also frivolous for a claimant who has some measure of a legitimate claim to make false factual assertions." Id. at 1060. Nevertheless, "the simple fact that a plaintiff has filed a large number of complaints, standing alone, is not a basis for designating a litigant as 'vexatious.'" Id. at 1061. Additionally, "the textual and factual similarity of a plaintiff's complaints, standing alone, is not a basis for finding a party to be a vexatious litigant." Id.

Gardias certainly qualifies as litigious. As discussed above, he has demonstrated a tendency to file lawsuits at the drop of a hat at every perceived slight. There appears to be a chronic disconnect between plaintiff in his working relationship with his supervisors at the University. Things reportedly occur on a continual basis that trigger plaintiff's belief that every incident must be based on his Polish national origin or alleged disability. So far, however, he has not managed to present evidence of discriminatory animus in any of his cases. Plaintiff has been told time and again in this (and prior) lawsuits that not every perceived slight or disappointment amounts to illegal discrimination under the law. Additionally, as noted above, in some instances Gardias flip-flops on issues and says what he thinks he needs to say, depending on whether he thinks it will be beneficial to him at a given moment.

17

Under the standard described above, however, this court cannot, at this time, say that any violation of Fed. R. Civ. P. 11 has been flagrant. But if he was not aware of it before, plaintiff certainly now is on notice that he cannot simply file successive lawsuits, merely rehashing what have become the same shopworn allegations. Defendant's motion for sanctions and for an order declaring Gardias to be a vexatious litigant is denied. The denial is without prejudice, however, to a renewal of the motion if subsequent circumstances warrant it.

## IV.   ORDER

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's motion for summary judgment is GRANTED.

2. Defendant's request for monetary sanctions and an order declaring plaintiff to be a vexatious litigant is DENIED WITHOUT PREJUDICE.

3. The clerk shall enter judgment and close the file.

Dated:   August 17, 2010

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5:09-cv-02090-HRL Notice electronically mailed to:

Mary Susan Cain-Simon    Mary.CainSimon@doj.ca.gov, ECFCoordinator@doj.ca.gov, Leticia.MartinezCarter@doj.ca.gov

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.

5:09-cv-02090-HRL Notice mailed to:

Piotr J. Gardias
72 Floyd St.
San Jose, CA 95110